In the Matter of the Petition of the BOARD OF WATER COMMISSIONERS OF THE VILLAGE OF WHITE PLAINS, Respondent, to Acquire Property of the WESTCHESTER COUNTY WATER WORKS COMPANY et al., Appellants.

1. WHITE PLAINS (VILLAGE OF) — INVALIDITY OF CONTRACT MADE BY AUTHORITIES THEREOF TO PURCHASE PROPERTY OF WATER WORKS COMPANY — AGREEMENT AS TO APPRAISAL BY ARBITRATORS. Where an agreement made by and between a water works company and the authorities of the village of White Plains on July 1, 1886, in which the village agreed to take and the water works company agreed to supply water for municipal and fire purposes for a period of five years at a stipulated price, contains a clause providing that the village should have the right at the end of stipulated periods to purchase the water works by giving the company one year's notice of such intention and paying to said company a valuation to be determined and appraised by a board of arbitrators, chosen as therein provided, such valuation in no case to exceed the cost of the works more than ten per cent, the purchase clause is *ultra vires* and void, and cannot be enforced by or against the village.

2. SAME — APPRAISAL OF PROPERTY OF WATER WORKS COMPANY MADE BY COMMISSIONERS IN CONDEMNATION PROCEEDINGS — ILLEGAL AND ERRONEOUS WHEN BASED UPON INVALID CONTRACT OF PURCHASE.

Where the board of water commissioners of the village of White Plains, appointed by the statute (L. 1896, ch. 769), with power to supply the village with water and to acquire by purchase or condemnation all water, water rights and property necessary therefor, whether owned by individuals or water companies, instituted condemnation proceedings pursuant to such statute to acquire the property of a water works company then supplying the village with water under the contract of July 1, 1886, and the commissioners appointed in such proceeding instead of appraising such property, including the good will and franchise of the company, at its full value, as provided by the statute, refused to be governed thereby and determined the value of the real property, and plant of the company in the manner provided for by the contract of July 1, 1886, without any award for the franchise rights of the company, such determination and award are illegal and erroneous and must be set aside and a new appraisal ordered before new commissioners to be appointed by the court.

*Matter of Bd. of Water Comrs. of White Plains,* 71 App. Div. 544, reversed.

(Argued June 18, 1903; decided October 13, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered May 7, 1902, which affirmed an order of Special Term confirming a report of commissioners of appraisal in proceedings instituted by the board of water commissioners of the village of White Plains to acquire all the property and franchises of the Westchester County Water Works Company.

The facts, so far as material, are stated in the opinion.

*David McClure* for Farmers' Loan and Trust Company, appellant. The petition should have been dismissed as not filed by a person entitled to petition for the condemnation of real property. (L. 1896, ch. 769, § 3; Code Civ. Pro. § 3359; *Ehrgott* v. *Mayor, etc.,* 96 N. Y. 264; *Raub* v. *Comrs.,* 66 How. Pr. 368; *N. Y. B. D. Co.* v. *Mayor, etc.,* 8 Hun, 247; *Swift* v. *Mayor, etc.,* 83 N. Y. 533; *Bronk* v. *Riley,* 2 N. Y. Supp. 266; *Matter of R. W. Comrs.,* 66 N. Y. 413.) The action of the commissioners was based upon an erroneous principle of law. (*Bohm* v. *M. E. R. Co.,* 129 N. Y. 576; Cooley Const. Lim. § 565; *Henderson* v. *N. Y. C. R. R. Co.,*

78 N. Y. 433; 6 Am. & Eng. Ency. of Law, 568; *New-man* v. *M. E. R. Co.*, 118 N. Y. 623; *Matter of City of Brooklyn*, 143 N. Y. 596; *Moulton* v. *N. W. Co.*, 137 Mass. 163; *S. W. W. Co.* v. *Vil. of Skaneateles*, 161 N. Y. 154.)

*Louis Marshall* for the Westchester County Water Works Company et al., appellants. As a result of the proceedings taken pursuant to chapter 737 of the Laws of 1873 the water company acquired a valid franchise, unlimited as to time, to supply the village of White Plains and its inhabitants with pure and wholesome water. (*Matter of City of Brooklyn*, 143 N. Y. 596; *People* v. *O'Brien*, 111 N. Y. 1.) The extent and nature of the franchise must be determined by the instrument creating it, and not by any instrument subsequently executed. (*B. G. L. Co.* v. *Claffy*, 151 N. Y. 24; *Thomas* v. *R. R. Co.*, 101 U. S. 71; *C. T. Co.* v. *Pullman Co.*, 139 U. S. 43; *O. R. R. Co.* v. *O. R. R. Co.*, 130 U. S. 28; *Snell* v. *Chicago*, 152 U. S. 199; *Black* v. *D. & R. C. Co.*, 22 N. J. Eq. 130; *Abbott* v. *A. H. R. Co.*, 33 Barb. 578; *People* v. *Ballard*, 134 N. Y. 269; *Legrand* v. *M. M. Assn.*, 80 N. Y. 638; *Dupee* v. *B. W. Co.*, 114 Mass. 37.) The provision of the contract of July 1, 1886, which assumes to limit the compensation of the water works company to the cost of its works and ten per cent in addition thereto, must be entirely disregarded. (*Craig* v. *Wells*, 11 N. Y. 315; *Moss* v. *Stanton*, 51 N. Y. 649; *Dennison* v. *Taylor*, 15 Abb. [N. C.] 439; *C. & G. E. R. R. Co.* v. *Dane*, 43 N. Y. 240; *Stern* v. *Ladens*, 47 App. Div. 331; *Moffett* v. *City of Goldsborough*, 52 Fed. Repr. 560.) The "purchase" clause of the contract of 1886 has no application whatsoever to these proceedings, and the appraisers had no right to consider the question of "cost." They were bound to award the full value of the real estate, plant and franchise of the water company as a going concern, with an earning capacity in excess of its operating expenses. (*M. N. Co.* v. *United States*, 148 U. S. 312; *N. W. Co.* v. *Newbury-*

16

*port*, 168 Mass. 541; *Matter of City of Brooklyn*, 143 N. Y. 596; *S. W. W. Co.* v. *Vil. of Skaneateles*, 161 N. Y. 154; 184 U. S. 354.) The petitioner, the board of water commissioners of the village of White Plains, had no legal capacity to sue, in that it is not a natural person or a corporation, and chapter 769 of the Laws of 1896 did not authorize the institution of proceedings in condemnation by such board or otherwise than in the corporate name of the village of White Plains. (Code Civ. Pro. §§ 3358, 3360; *A. E. Bank* v. *Sage*, 6 Hill, 562; *Matter of Marsh*, 71 N. Y. 315; *Craig* v. *Town of Andes*, 93 N. Y. 405; *Matter of B., etc., R. Co.*, 79 N. Y. 71; *Matter of N. Y. C. Co.*, 104 N. Y. 1; *Matter of B., W. & N. R. R. Co.*, 72 N. Y. 245; *Matter of N. Y. C. & H. R. R. R. Co.*, 70 N. Y. 191.)

*Henry T. Dykman* for respondent. The claim that the petition should be dismissed, as not filed by a person entitled to petition for the condemnation of real property, cannot be maintained. (L. 1896, ch. 769, § 3; *Matter of R. W. Co.*, 66 N. Y. 413.) The claim that the purchase clause set forth in the permission to organize the corporation and incorporated in the contract was not binding on the water company or the trustee for the bondholders, lacked mutuality and was *ultra vires*, cannot be maintained. (*Matter of City of Brooklyn*, 143 N. Y. 596; *Wick* v. *F. P. R. S. R. Co.*, 50 N. Y. Supp. 479; *Legrand* v. *M. M. Assn.*, 80 N. Y. 638; *South Wales* v. *Redmond*, 10 C. B. [N. S.] 682; Beach on Corp. 963, 994; *C. & O. R. R. Co.* v. *Miller*, 114 U. S. 176.)

HAIGHT, J. These proceedings were instituted on the 2d day of September, 1896, by the board of water commissioners of the village of White Plains, pursuant to chapter 769 of the Laws of 1896, to acquire all of the real estate, property and franchises of the Westchester County Water Works Company. They resulted in the appointment of commissioners of appraisal who filed their report, awarding as damages for the

taking of such property the sum of $103,298, upon which a final judgment of confirmation has been entered. Upon a review of the judgment the Appellate Division reversed so much of the order as refused the application for an amended report, and required an amended report to be filed by the commissioners of appraisal. Thereupon the commissioners, in obedience to such requirement, made a further report, in which they stated that in making their award they intended to cover whatever rights to transact future business in White Plains the Westchester County Water Works Company possessed, but were, however, " unanimously of the opinion that the company did not possess such a franchise as would entitle it to an award based upon its annual earnings, or its future business prospects ; the restrictive conditions with which, by the contract of July 1st, 1886, the company's franchise was encumbered, having, in our opinion, reduced the value of this franchise to a sum necessarily insignificant as compared with the value which an unrestrictive franchise would have had." And then concluded with the statement that " We considered that an award of, approximately, one hundred thousand dollars would amply cover the value of such plant and real estate, liberally estimated. The balance of our award was intended to represent in part a slight overpayment for the material properties taken, and in part a payment for the nominal and practically valueless remaining rights which the company possessed at the time of the commencement of these proceedings." Upon the filing of this report the Appellate Division affirmed the judgment entered upon the order of the Special Term.

On the 14th day of May, 1886, John F. Moffett and others requested the board of trustees of the village of White Plains and the supervisors of the towns of Greenburg and White Plains to consider their application to supply the village of White Plains and its inhabitants with pure and wholesome water, and to grant them permission to form a water works company, under chapter 737 of the Laws of 1873, and acts

amendatory thereof and supplementary thereto. On the 28th day of May, 1886, at a meeting of the trustees of the village a resolution was adopted, giving permission to Moffett and his associates to form a water works company for the purpose of supplying the village with water, pursuant to the provisions of the act above mentioned, imposing the following condition: "7. The village shall have, at the end of five years and at the end of every five years thereafter, the right to purchase said water works in the manner as now provided for by law." Thereafter, and on the first day of July, 1886, an agreement was entered into by and between the Westchester County Water Works Company, which had theretofore been incorporated, and the village of White Plains, in which the village agreed to take, and the water works company agreed to supply, water for municipal and fire purposes, for a period of five years, at a stipulated price, and then provided: "The party of the second part reserves the right at the expiration of five years from the date of the completion of the works and at the expiration of every five years thereafter, to purchase said works as they may then exist by giving to said company one year's notice of such intention and paying to said company the appraised valuation. The amount so paid to be determined by three persons not in the interest or employ of said village or company, the board of trustees of said village choosing one, the company choosing one, and these two persons choosing a third. Such valuation by said appraisers in no case to exceed the cost of the said works more than ten per cent. And the decision and appraisal of these three persons to be final and conclusive on the parties to this contract." This agreement was renewed on the 23rd day of July, 1892, by a written agreement, containing a number of changes, but omitted the above purchase clause, and then concluded with the provision that "This agreement and the agreement itself (referring to the agreement renewed) shall remain and continue in force for the period of five years from the date of the execution of this agreement."

The water works company was the owner of four parcels
of real estate in the town of White Plains. It had laid
water mains from the source of supply to and through
the streets of the village, about seventeen miles in length.
It had erected standpipes, pumping engines, hydrants,
nozzles and other implements of machinery necessary for
carrying out its contract with the village. It had given
two mortgages upon its property to the Farmers' Loan &
Trust Company, upon which two hundred thousand dollars
in bonds had been issued, and were outstanding.  Its income
during the year 1896 was.................... $21,055.38
Its expenses......... .................... 6,199.35

Its net earnings...................... $14,856.03

The earnings, therefore, were more than sufficient to pay
the interest on the bonded indebtedness. It is claimed that
the cost of construction, as shown by the company's books,
was $293,067.03 ; that no dividends were paid to the stock-
holders prior to 1894, and that all of the earnings of the
company prior to that time had been devoted to the construc-
tion and extension of its plant. Its experts testified that the
property of the company was worth from three hundred
thousand to four hundred thousand dollars. The counsel for
the village has vigorously attacked the value of the com-
pany's property, and claims that the award made is largely in
excess of its true value. He does not, however, question the
amount given as the company's income from its business. It
is not our province to determine questions of fact. Our
jurisdiction is limited to the determination of questions of
law. The commissioners of appraisal have, as they state,
awarded only nominal damages for the franchises of the com-
pany and the good will of its business as a going concern,
and it becomes our duty to determine whether the appraisers
have adopted an erroneous basis in fixing the amount of their
award.

The respondents claim that the result reached by the appraisers is unjust, and that this is practically conceded in their report. The holders of the one hundred thousand dollar bonds of the company, issued upon its second mortgage, have had their securities taken from them and their trustee turned out of court without any remuneration whatever. The stockholders, who for ten years have been constructing a plant and procuring customers for the company, have had their property, franchises and good will taken from them without a penny for themselves or for their creditors. The commissioners of appraisal, recognizing the hardships or injustice resulting from their determination, have said to the bondholders in their report, " that in so far as this decision affected innocent holders of the second mortgage bonds of the Westchester County Water Works Company, we reached it with regret." And to the stockholders they stated that " the suggestion that it seems rather hard on the organizers of this concern that they should not get the full benefit of their activity and enterprise in building up a water business in White Plains, is, to our minds, fully met by the fact that these gentlemen must themselves have contemplated parting with their plant at a price based not upon its value as a going concern, but upon its cost of construction, when they entered into the aforementioned contracts with the village." And, again, " the main reason; the only reason, for the existence of this unfortunate fact is to be found in the inadequacy of the original franchise as restricted by the contracts between the village and the company." The commissioners in giving their reasons for their decision state that " by the contract of July 1st, 1886, the company's franchise was encumbered, having, in our opinion, reduced the value of this franchise to a sum necessarily insignificant as compared with the value which an unrestricted franchise would have had." Again, speaking of the company, they stated, " Did it possess a valuable franchise which could be taken as a basis for the transaction of an unlimited, or even of a limited, but prolonged amount of

future business ?   Our conclusion was that it did not."   It is thus apparent that the question involved in this case depends upon the construction, meaning and effect that is to be given to the purchase clause embraced in the contract, to which we have already referred.

Under the contract the valuation by the appraisers was in no case " to exceed the cost of the said works more than ten per cent."   Were the appraisers to determine the value of the property as it then existed ?   Or were they to determine the cost — the amount expended by the company in the construction of the plant and in the establishment of its business ?   If the latter, then, as we have seen, the books of the company showed that the cost amounted at that time to nearly $300,000, and ten per cent added would make nearly $330,000.   But the commissioners of appraisal did not adopt this basis in determining the amount of their award.   They found the value of the visible, tangible property of the company as it then existed, excluding the franchise and good will, independent of the question of cost of construction, and made no finding as to the amount of such cost.   It is, therefore, apparent that they did not follow the construction of the contract given by themselves in their report, in which they state : " These gentlemen (speaking of the organizers of the company) must themselves have contemplated parting with their plant at a price based *not upon its value* as a going concern, *but upon its cost of construction*, when they entered into the aforementioned contract."   We, however, do not deem it advisable to rest our decision upon any construction of the contract which may have been given, for the case involves other questions of paramount importance which we think must control its disposition.

The question raised by the appellants at the threshold of the discussion in this case is to the effect that the purchase clause incorporated in the contract of July 1st, 1886, is *ultra vires* and void ; that the village of White Plains had no power to contract for the purchase of the works or to provide for the payment thereof.   The statute then in force was chapter 181

of the Laws of 1875, as amended by chapter 175 of the Laws of 1881, chapter 255 of the Laws of 1883, and chapter 211 of the Laws of 1885. That statute authorized any incorporated village in the state to organize a board of water commissioners, and such commissioners were authorized to contract for, purchase and take by deed, in the name of the village, all lands, streams, water, water rights or other property, real or personal, or rights therein, which may be required for the purpose of supplying the village or its inhabitants with pure and wholesome water, and in case the commissioners could not agree with the owners as to the compensation to be paid therefor, they were authorized to institute proceedings for the condemnation of such property rights, and upon their petition the Supreme Court was required to appoint commissioners residing in the county in which the village was located to determine the amount to be paid therefor. These provisions of the statute, however, had reference to lands, streams, water rights, etc., belonging to individuals, and not to the property acquired by water works corporations and already devoted to a public use. The only provision of the statute permitting the acquiring of the property of corporations is section 22, and that provides : " Whenever any corporation shall have been organized under the laws of this state for the purpose of supplying the inhabitants of any village with water, and it shall become or be deemed necessary by the board of water commissioners herein authorized to be created, that the rights, privileges, grants and properties of such corporation shall be required for any of the purposes of this act, the commissioners herein authorized to be created  *  *  *  shall have the right to make application to the Supreme Court, at a special term thereof, held in the judicial district in which the works of such corporation are situated, for the appointment of three commissioners of appraisement, who shall be disinterested freeholders and residents of the county." The other provisions of the statute make it the duty of the commissioners of appraisal to determine the amount that should

be paid, etc. No authority is, therefore, given to the board of water commissioners to acquire the property of such a corporation by agreement. If it is deemed necessary that the property should be acquired, the board is to apply to the Supreme Court for the appointment of commissioners of appraisal. The statute contains no limitation as to the time within which such application may be made. It may, therefore, be made at any time when the board of water commissioners see fit to act, provided they have complied with the provisions of the act under which they were appointed.

The company's franchise was a perfect grant, permitting it to use the streets of the village for its water mains and giving it the privilege of supplying the municipality and the inhabitants thereof with water. The only restriction was the clause which reserved the right of the village at the end of five years and at the end of every five years thereafter to purchase its works in the manner " as now provided for by law." The right to purchase in the manner provided for by law already existed under the statute, to which we have called attention, and, therefore, this provision in the grant did not add to or take from the grant any right or power whatever, but simply left it subject to the provisions of the existing statute. On the 1st day of July, after the granting of the franchise, the contract in question was entered into to supply the municipality with water for the period of five years. In the first place it reserved the right to the village at the expiration of five years and at the expiration of every five years thereafter to purchase the works of the company as they may then exist by giving to the company one year's notice of such intention and paying the appraised valuation. In the second place the contract proceeds to specify how the valuation shall be made, that is, by three persons, one appointed by the trustees of the village, the other by the company, and the two persons so selected choosing the third. Then follow provisions limiting the valuation not to exceed the cost of the works by ten per cent and making the decision of the appraisers final and conclusive upon the parties.

Under the statute the board of water commissioners had the right to apply to the Supreme Court to condemn the property and to appoint commissioners of appraisal, while under the contract the trustees of the village substituted an entirely different proceeding for the acquiring of the property. The statute, as we have seen, has not authorized the trustees of the village to acquire such property; that power the legislature has given to the board of water commissioners. Such board only has the power to act for the village and make valid contracts with reference to the acquiring of property for water works; the board of trustees of the village had no power to carry out the provisions of the contract and complete the purchase of the property thereunder, even though the water works company should consent thereto. They could not issue bonds, borrow money, or pay therefor and make their acts binding upon the municipality, for the reason that the statute had given them no such powers.

The functions of municipalities, such as cities and villages, are chiefly public, but some may be private. The general powers of government are public. They pertain to the powers of legislation, the adoption of ordinances, the protection of property, the care of highways, and the raising of taxes for the support of the government. In addition to these powers other functions are at times conferred upon municipal corporations, by which they may act in their individual capacity for their own private gain. Dillon, in his work on Municipal Corporations (Vol. 1, sec. 27), says: " Powers or franchises of an exceptional and extraordinary nature may be, and sometimes are, conferred upon municipalities such as are frequently conferred upon individuals or private corporations; thus, for example, a city may be expressly authorized, in its discretion, to erect a public wharf and charge tolls for its use; or to supply its inhabitants with water or gas, charging them therefor and making a profit thereby. In one sense such powers are public in their nature, because conferred for the public advantage. In another sense they may be considered private because they are such as may be, and often are, conferred

upon individuals and private corporations and result in a special advantage or benefit to the municipality as distinct from the public at large." At common law it was no part of the duty of municipalities to furnish light or water for their inhabitants, any more than it was their duty to supply any of the other necessaries or conveniences. The supplying of gas and water by the municipality necessitates its engaging in business of a private character which competes with individual effort and enterprise. When, therefore, a city or village wishes to engage in such business, it must first obtain special legislative authority therefor.

In the case of *Wells* v. *Town of Salina* (119 N. Y. 280) EARL, J., in delivering the opinion of the court, says : " Business corporations, unless restrained by their charters, possess the power to borrow money and issue securities therefor. * * * But towns and other municipal corporations are organized for governmental purposes, and their .powers are limited and defined by the statutes under which they are constituted. They possess only such powers as are expressly conferred or necessarily implied. They are clothed with the power of taxation, and can thus raise all the money needed for ordinary municipal purposes. * * * It is the general, if not the universal, law of this country, and of England, that municipalities are not empowered to borrow money for municipal purposes unless expressly authorized to do so by statute." In the case of *Smith* v. *City of Newburgh* (77 N. Y. 130) the action was to recover $750 for rent upon a lease of land made by the plaintiff to the city of Newburgh. The lease was made by the city upon recommendation of water commissioners, for the purpose of constructing thereupon a distributing reservoir. The lease ran for the term of twenty years. It was held that the city had no power to enter into such a contract, and that, therefore, the lease was void; that where the officers of a municipality fail to pursue the strict requirement of a statutory enactment in contracting for the municipality, it is not bound, nor is it bound by any acts of its officers, in ratification of such illegal contract. In the case

of *Syracuse Water Company* v. *City of Syracuse* (116 N. Y. 167) the question involved was as to whether the grant of a franchise to the water company was to be deemed the grant of an exclusive privilege to occupy the streets of the city with its pipes. It was held that the grants of franchises by the state are to be so strictly construed as to operate as a surrender of the sovereignty no further than is expressly declared by the terms of the grant; the grantee takes nothing in that respect by inference. BRADLEY, J., in delivering the opinion of the court, says: "The municipal corporation, as such, could bind itself by such contract only as it was authorized by statute to make. It could not grant exclusive privileges, especially to put mains, pipes and hydrants in its streets, nor could it lawfully, by contract, deny to itself the right to exercise the legislative powers vested in its common council." In *Huron Water Works Company* v. *City of Huron* (30 L. R. A. 848) it was held that the power to construct a water works system for a city is not a necessary incident of its corporation, but must, like all its other powers, be derived directly from the legislature of the state. (See, also, *City of Petersburg* v. *Applegarth*, 28 Gratt. 321; 28 Am. Rep. 357, and *Matter of Long Island Water Supply Co.*, 30 Abb. [N. C.] 36–44.) It, consequently, follows that the trustees of the village of White Plains had no power to make the contract in question, or to carry out its provisions; that it is not a contract which could be enforced by or against them, and it is, therefore, *ultra vires* and void. These proceedings were, as we have seen, instituted by the board of water commissioners, pursuant to the provisions of the statute to which we have called attention. Under the provisions of this legislation it became the duty of the commissioners of appraisal to appraise the value of the company's property, including its good will and franchise at its full value but without enhancement from any of the provisions of the act. The commissioners of appraisal, instead of following these provisions of the act, have, as we have seen from their report, refused to be governed thereby and have instead thereof attempted to follow the provisions

of the contract.    In doing this they adopted a wrong basis for the ascertainment of the value of the company's property.

The order of the Appellate Division and that of the Special Term confirming the report of the appraisers should be reversed and the report of the commissioners set aside and a new appraisal ordered before new commissioners to be appointed by the court, with costs to abide the final award of costs.

PARKER, Ch. J., VANN and WERNER, JJ., concur : GRAY and MARTIN, JJ., absent; CULLEN, J., dissents.

Order reversed, etc.