(81 Misc. Rep. 611.)

### GIBBS v. LUTHER et al.

(Supreme Court, Special Term, Cattaraugus County. July, 1913.)

1. MUNICIPAL CORPORATIONS (§ 1000*)—TAXPAYER'S ACTION—PARTIES.
   In an action to enjoin a city from entering into a contract for paving a street pursuant to a resolution of the common council, the members of the common council, as such, were not necessary parties, as their action was completed and an injunction against them would avail nothing.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2167–2172, 2198; Dec. Dig. § 1000.*]

2. MUNICIPAL CORPORATIONS (§ 290*)—PUBLIC IMPROVEMENTS—PRELIMINARY PROCEEDINGS—STATUTORY PROVISIONS.
   Olean City Charter (Laws 1893, c. 478), § 98, relative to paving streets at the expense of abutting property owners, requires a petition of a majority of the property owners naming two temporary commissioners to have charge of the work, publication of notice thereof, a hearing of objections, approval of the petition, a direction that the improvement be made, a determination of its probable cost, an assessment of the expense, publication of notice by the assessors to correct and confirm the assessment, and collection of the assessment as other taxes are collected. Laws 1913, c. 247, adds to the General City Law (Consol. Laws 1909, c. 21), a number of new sections, section 24 of which provides that that act is not to be construed as in derogation of the powers of the state, but as intended to aid the state in the execution of its duties by providing adequate power of local government for the cities of the state. Section 22 provides that the powers thereby granted shall be in addition to all the powers, privileges, and functions existing in any city pursuant to any other law. Section 20 provides that, subject to the Constitution and general laws of the state, ev-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ery city may construct and maintain public works and public improvements including local improvements, and assess upon the property benefited thereby the cost in whole or in part. Section 23, subd. 1, provides that the powers thereby granted are to be exercised by the officers or body vested with such powers by any other law or ordinance, and in the manner and subject to the conditions prescribed by law or ordinance, but that no provisions of any special or local law shall operate to defeat or limit the grant of powers contained therein; that any provision of any special or local law which operates to prevent the exercise or limit the extent of any power thereby granted shall be superseded; that, when any such law is superseded thereby, such power, freed from the limitations imposed by such law, shall be exercised by the same officer or body that would be vested with such power if such provisions had not been superseded; but that the exercise thereof shall be subject to the limitations provided for in subdivision 2. Subdivision 2 provides that, in the absence of any provision of law or ordinance determining by whom and in what manner or subject to what conditions any power thereby granted shall be exercised, the common council of the city, subject to the provisions of that section, shall have power to determine by whom, in what manner, and subject to what conditions the powers shall be exercised. *Held*, that such act does not supersede the requirements of the Olean Charter mentioned; they not being a limitation upon the power granted by that act, but being conditions upon which the power shall be exercised.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 763, 764; Dec. Dig. § 290.*]

3. CONSTITUTIONAL LAW (§ 63*)—LEGISLATIVE POWERS—DELEGATION.
      The legislative power is vested by the Constitution in the Senate and Assembly, and purely legislative powers of the state cannot be delegated to a municipality.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 108–114; Dec. Dig. § 63.*]

Taxpayer's action by Arthur Gibbs against George H. Luther and others, as Commissioners of Public Works of the City of Olean, and others. On motion to continue the temporary injunction. Motion granted.

Allen J. Hastings, of Olean, for the motion.
Henry Donnelly, of Olean, opposed.

POOLEY, J. This is an action by a taxpayer, pursuant to section 5, General Municipal Law, to restrain defendants from entering into any contract for paving North Clinton street, or for laying water lines therein, on the ground that the proceedings are illegal official acts, affecting the funds of the city. A temporary injunction has been issued which it is now sought to continue.

The defendants have all appeared, and their answer is submitted, alleging that the proceedings to pave, etc., are authorized by the City Charter, together with the provisions of chapter 247, Laws of 1913, known as the Home Rule Bill, and they urge that the city of Olean is not a proper party to this action, and that the members of the common council are necessary parties.

The acts of the city, through its officers and representatives, are attacked, and it and they are entitled to be heard. Wenk v. New York,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

171 .N. Y. 607, 64 N. E. 509; Steele v. Glen Park, 193 N. Y. 341, 86 N. E. 26.

[1] There would be no useful purpose subserved in joining the members of the common council as such, as parties, because their action, whether right or wrong, is completed, and an injunction against them would avail nothing.

[2] The charter of the city of Olean is found in chapter 478, Laws of 1893, and acts amendatory thereof, which provide for paving streets and assessing the expense upon abutting property. As in most city charters, it provides in detail the machinery to accomplish this, in section 98, viz.: A majority petition for payment and nominating two temporary commissioners, presented to the common council, publication of notice thereof and of a hearing of objections, approval of the petition, and directing the improvement to be made, determining probable cost, the expense to be assessed, publication of notice by the assessors to correct and confirm the assessment, and collecting as other city taxes are collected. The charter also provides that, "in anticipation of the collection of the taxes, the common council shall issue certificates of indebtedness or revenue bonds of said city in anticipation of such respective amounts," payable in not exceeding ten years, with interest.

None of these steps have been taken, but the common council, on May 19, 1913, took the following action:

"By Alderman Ball: Resolved that the following streets be paved and otherwise improved under the direction of the commissioners of public works, A. D. Pratt and John Meloy as temporary commissioners for the improvement of Laurel avenue from Clinton street to the line of the P. R. R. Clinton street from East State street to the north line of Jay street, temporary commissioners of Clinton street to be E. V. Wood and H. W. Eaton. The width of Clinton street is to be 26 feet and Laurel avenue to be 24 feet. The above streets to be improved under and by virtue of chapter 247 of the Laws of 1913, commonly known as the Home Rule Bill. Adopted."

Following this, the commissioners of public works published notice that sealed proposals would be received until June 21, 1913, "for the construction of a vitrified. block pavement in North Clinton street, * * *" and the water commissioners published notice that sealed bids or proposals would be received until June 25, 1913, for putting in lead service connections in North Clinton street and other streets.

No petition has been presented, nor any temporary commissioners named by the property owners; they have had no voice in determining the kind of pavement, nor does the resolution indicate the kind of pavement; no notice to them nor opportunity to present objections. The commissioners undertake to determine and specify the kind of pavement as a vitrified block pavement; whether of stone or brick or wood block does not appear.

The defendants contend that, by reason of the powers granted by the home rule bill, the preliminaries required by the charter are dispensed with and superseded, and that the common council alone have power to pave any street, and consequently every street in the city on their own motion.

This is not the meaning of the home rule bill. If it were, it would accomplish the opposite of its supposed intention, and would, in this

instance, invest 16 citizens of the city of Olean with arbitrary power to levy assessments upon owners of property in a given street without their consent or approval. They would not only dictate that the street shall be paved, but also the kind of pavement.

[3] The legislative power is vested by the Constitution in the Senate and Assembly, and cannot be delegated, and its exercise is governed by the provisions of article 12, § 1, of the Constitution, "to restrict their (cities) power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent abuses in assessment and in contracting debt by such municipal corporations."

The power to tax is one of the highest prerogatives of the state, and is and should be exercised with the greatest care to avoid abuses. So in these latter days of advanced ideas of popular government, when it is deemed wise by general legislation to give into the hands of the citizens of a municipality a larger part in the administration of their own affairs, it must be remembered that purely legislative powers of the state cannot be delegated to the municipality, because even the Legislature has no such power. Stanton v. Supervisors, 191 N. Y. 428, 84 N. E. 380; Village of Saratoga Springs v. Saratoga Gas, etc., Co., 191 N. Y. 123, 83 N. E. 693, 18 L. R. A. (N. S.) 713.

The home rule bill, so called, is very broad in its terms and is to be construed (section 24), "not as an act in derogation of the powers of the state, but as one intended to aid the state in the execution of its duties, by providing adequate power of local government for the cities of the state." Section 22 provides that:

"The powers granted by this article shall be in addition to and not in substitution for, all the powers, privileges and functions existing in any city pursuant to any other provision of law."

Section 20 provides that:

"Subject to the Constitution and general laws of this state," certain powers are granted, among them being: "(11) To construct and maintain public buildings, public works and public improvements including local improvements, and assess and levy upon the property benefited thereby the cost thereof in whole or in part."

Section 23, subd. 1, provides that:

"The powers granted by this act are to be exercised by the officer, officers or official body vested with such powers by any other provision of law or ordinance (subject to amendment or repeal of any such ordinance), and in the manner and subject to the conditions prescribed by law or ordinance (subject to amendment or repeal of any such ordinance), but no provision of any special or local law shall operate to defeat or limit in extent the grant of powers contained in this act; and any provision of any special or local law which in any city operates, in terms or in effect, to prevent the exercise or limit the extent of any power granted by this act, shall be superseded. Where any such provision of special or local law is superseded under the provisions of· this subdivision, such power, freed from the limitations imposed by such provision, shall be exercised by the same officer, officers or official body that would be vested with the same under the provisions of this subdivision, if such provision had not been superseded, but the exercise thereof shall be subject to the limitations provided for in subdivision two of this section."

Subd. 2. "In the absence of any provision of law or ordinance determining by whom and in what manner, or subject to what conditions any power granted by this act shall be exercised, the common council or board of alder-

men, or corresponding legislative body of the city, shall, subject to the provisions of this section, have power by ordinance to determine by whom and in what manner and subject to what conditions, said power shall be exercised."

The home rule bill grants powers in addition to and not in substitution of the charter provisions, and is intended to supply omissions. Charters that contain all necessary powers require no augmentation, while those that are lacking are furnished, in order to bring all cities up to a standard of efficiency in transacting their business. It does not pretend to direct the details and methods of carrying out the powers granted. For those, we look to the provisions of the existing charter, and they must be followed in order to secure a legal proceeding.

It is contended, however, that the formality of a petition by citizens, as a prerequisite, is a limitation upon the power granted, and hence is superseded, and the provision of the act (section 23) quoted above is cited to substantiate this contention, the particular clause reading: "But no provision of any special or local law shall operate to defeat or limit in extent," etc.

In my opinion, the charter provision is not a limitation within the meaning of the home rule bill. It does not "defeat or limit in extent the grant of powers contained in this act," it does not "prevent the exercise or limit the extent," but prescribes the conditions upon which the power shall be exercised. Can it be said that the Legislature intended to supersede those provisions of the charter which were placed there to safeguard the rights and property of the citizen, by granting, in the guise of a home rule bill, arbitrary powers which leave the citizen no rights except to pay? The act requires no such strained construction, and, if it is to remain upon the statute books, it must be read as in aid of, and not as in annihilation of, provisions recognizing the rights of the citizen. If the formality of a petition of property owners is dispensed with, why not the other provisions of the charter? Why appoint the temporary commissioners? Why take the time to advertise for bids? In short, carried to its logical conclusion, all the details would be wiped out and the members of the common council would be in absolute control.

The common council has the power, under the conditions named, to pave every street in the city. If these conditions are superseded or canceled, then the common council would only be accountable to the voters in case they came up for re-election. This is not what the people have been taught to expect from the advocates of home rule for cities.

This bill, read in connection with the charter of the city of Olean, does not change the procedure under the latter, in the performance of municipal administrative acts, and there is no authority for the acts of the common council in directing the improvement, nor for the acts of the commissioners in advertising for bids with the intent of entering into contracts on behalf of the city, until the provisions of the charter are complied with.

The acts sought to be enjoined affect the funds and property rights of the municipality, and are therefore the proper subjects for judicial control. The bonds to be issued in anticipation of the collection of the

assessment will be obligations of the city of Olean, and, if the local assessment be declared void for irregularity, the city's funds would have to be used to meet the obligation.

The injunction granted herein is continued until the determination of this action.