Cropsey, J.
The plaintiff owns and operates lines of surface cars in the city of New York. It seeks an injunction restraining the defendant from operating certain automobile bus lines that are now being maintained. The operation of the bus lines was authorized by the board of estimate of the city of New York. They run virtually parallel with certain of the car lines operated by the plaintiff. That they are directly in competition with the plaintiff is apparent.
Plaintiff seeks the injunction alleging that the bus lines are operated without authority of law and that the provisions of statute have not been complied with. The plaintiff contends no bus line can be operated except under the provisions of sections 24, 25 and 26 of the Transportation Corporations Law and upon compliance with the provisions of section 74 of the *350 Greater New York charter. The provisions of the Transportation Corporations Law mentioned bring the owners and operators of a bus line within the definition of the term “ common carrier,” as used in the Public Service Commissions Law, and require that a certificate of public convenience and necessity be obtained after the consent of the local authorities of the city has been Secured following a public notice and hearing. Section 74 of the charter prescribes the length of notice, time within which the application must be acted upon, and other requirements, including the necessity for the separate and additional approval of the mayor besides that of the board of estimate to any contract or resolution authorizing such operation. Section 53 of the Public Service Commissions Law requires the obtaining of a certificate of public convenience and necessity before any railroad may be constructed or operated. And as has been noted, this provision is made applicable to the operation of bus lines.
The defendant in effect concedes he has not complied with any of the provisions of statute above referred to. He admits that no certificate of public convenience and necessity has been obtained from the Public Service Commission, that the right to operate the bus lines has not been granted after public hearing, and that none of the other requirements has been followed. His contention is that none of the provisions referred to is applicable, that the city of New York has the right to maintain the bus lines without-complying with any of the provisions of the statutes mentioned. The defendant’s claim in that regard i.s twofold. First, that an emergency existed which justified the city in taking prompt action, and, second, that under the terms of the so-called Home Rule Act (Gen. City Law, art. 2-a, added by Laws of 1913, chap. 247) *351 the city has the power to operate bus lines or street railways or other railways for the convenience, comfort, health or happiness of its inhabitants.
The complaint in this action alleges that the defendant is operating the bus lines. This is true in the sense that acting under the resolutions of the board of estimate he made arrangements for their operation and in some respects is supervising it. But the papers in the case show that the operation is not conducted by the city. On the contrary, the buses are operated wholly by their individual owners and solely for their profit. The bus owners pay nothing to the city for their franchise or right to operate over the city streets, nor for their wear and tear thereof, nor for the use of the squares and public places which serve as their stations or terminals. The men who operate the buses are not city employees. They are either the owners of the buses or the employees of those owners. Not only does the city derive no benefit from their operation, but it is actually expending large sums of money in connection therewith. These bus owners are permitted by the defendant to run their cars and the defendant attempts to regulate to some extent their operation. He endeavors to see that they leave their various terminals regularly and are operated in accordance with some general regulations which he has prescribed. In this endeavor the defendant is employing a large number of men at the expense of the taxpayer which, at the present rate, will amount to over $85,000 a year. The bus owners and operators collect and keep all the fares. This was admitted by the corporation counsel upon the argument. They do not account to the city for any of their receipts. In other words, the buses are maintained for the sole profit of their owners and are in no sense maintained or operated by the city of New York. The bus owners *352 are not even required to carry liability insurance to protect pedestrians or others who may be injured through their careless operation. The bus owners are under no obligation to continue their operation. They may stop running on their route at any time and leave the state taking their buses with them. Their operation under such conditions is a menace to the public.
Bus lines maintained and operated by private individuals or corporations come within the provisions of the Transportation Corporations Law and the Public Service Commissions Law already mentioned. They cannot be operated without obtaining the certificate of public convenience and necessity and complying with the other requirements. This is held in an unbroken line of decisions. Public Service Commission v. Booth, 170 App. Div. 590; Public Service Commission v. Hurtgan, 91 Misc. Rep. 432; Public Service Commission v. Fox, 96 id. 283; Public Service Comm. v. Mt. Vernon Taxicab Co., 101 id. 497; Niagara Gorge R. R. Co. v. Gaiser, 109 id. 38. As the buslines in question here are owned and operated by private interests the above authorities are controlling and decisive.
But if it could be held that the bus lines in fact were being operated by the city the result would be the same. Their operation would still be illegal.' Municipalities are without authority, unless it is expressly conferred by the legislature, to operate railroads or bus lines or public utilities of any kind. Dillon Mun. Corp. (5th ed.) § 1237; Matter of Water Comrs. of White Plains, 176 N. Y. 239, 251; Queens County Water Co. v. Monroe, 83 App. Div. 105. The defendant claims that such power is given by the Home Rule Act (Gen. City Law, art. 2-a). No claim is made that such right exists under any other statute. The Home Rule Act grants to every city “ power to regulate, manage aid control its property and local *353 affairs.” § 19. The same section also states that no enumeration of powers in that act or any other law “ shall operate to restrict the meaning of this general grant of power, or to exclude other powers comprehended within this general grant.” But this general grant gives the city only the right to “ control its property and local affairs.” And the operation of railroads or "bus lines does not come within this provision. Section 20 of the act enumerates certain specific powers given to each city: “ Subject to the constitution and general laws of this state.” These specific powers include the operation of water supply systems (subd. 7) and the operation of ferries. Subd. 9. There is no authorization for the operation of railroad or bus lines, and the authorization for the operation of lighting systems is only “ for lighting streets, public buildings and public places.” Subd. 7. The construction and operation of the subways in this city and the city’s part therein was especially authorized by the Rapid Transit Act and its amendments. See Sun Printing & Publishing Assn. v. City of New York, 152 N. Y. 257; Admiral Realty Co. v. City of New York, 206 id. 110.
The Home Rule Act plainly does not give any specific authority to the city to become a common carrier. While the language of that act is somewhat broad it has been construed by the courts contrary to the defendant’s contention. Instead of virtually repealing all provisions of existing law relating to cities and giving them full and free power, as defendant in effect contends, the courts have held that the Home Rule Act has no such effect and gives no such unlimited powers. Existing limitations upon the powers of municipalities, existing either under special or general laws, still continue notwithstanding the provisions of the Home Rule Act. City of Geneva v. *354 Fenwick, 159 App. Div. 621; Gibbs v. Luther, 81 Misc. Rep. 611; Matter of International R. Co. v. Rann, 224 N. Y. 83, 90.
But if that act gave the city the right to become a common carrier its right to operate railroads or bus lines would have to be exercised under the provisions of the general laws of the state regulating such matters. And those provisions are the ones already referred to. The city has in no respect complied with such requirements. The defendant argues that the provisions of the Public .Service Commissions Law do not apply to municipally operated railroads or bus lines because the provisions of that act relating to such operation do not mention municipalities while the provisions of the same act relating to the operation of gas, electrical and steam corporations do specifically mention municipalities. But this is not controlling. And moreover in the definition of the term common carrier, found in subdivision 9 of sec-. tion 2 of that act, it is expressly stated that that term shall not be deemed to include “ a municipally owned ferry or a ferry company operating under a lease from a city.” Thus municipally owned or operated railroads or bus lines, if authorized by statute, must necessarily be held to be included within the definition. And the exception mentioned was added by chapter 805 of the Laws of. 1917, thus giving added significance to its meaning.
The additional claim of. the defendant is that the city has the power to operate bus lines in an “ emergency.” It has been held in some jurisdictions that the legislature may in an emergency authorize municipalities to perform acts and to engage in enterprises which but for the existence of the emergency could not be legally authorized. See Opinions of Justices of the House of Representatives, 155 Mass. 598; 182 id. 605. *355 But it does not follow from that that a municipality has such power unless it has been given it by the legislature. But this question need not be further discussed because the papers presented by the defendant do not show the existence of any “ emergency.” On the contrary, they show an intention to operate the bus lines for an indefinite period without complying with the provisions of law and not merely for a brief period until the provisions of law could be complied with.
The city is not free to act as it pleases any more than are its individual citizens. Bach is governed by statute. Bach must comply with the law. It is equally reprehensible for a municipality to do illegal or lawless acts as for an individual citizen to do the same. And when the city assumes power that it does not possess it must be enjoined the same as any citizen would be. Neither the city nor its citizens are above the law. Motion for an injunction is graated.
Motion granted.