WITMER v. CITY OF JAMESTOWN.

(Supreme Court, Appellate Division, Fourth Department.   March 4, 1908.)

1. MUNICIPAL CORPORATIONS — CONTRACTS OF EMPLOYMENT — AUTHORITY OF CITY.

A city cannot, before acquiring a waterworks system, enter into a contract with an individual, whereby he shall have charge for an indefinite period of the additions which may be made to a waterworks plant of a private corporation after the city has acquired it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 582–588.]

2. SAME—INVALID CONTRACT—CURATIVE STATUTE.

The curative provision of Laws 1903, p. 26, c. 17, authorizing a city to purchase the water supply plant of a private corporation, creating a board of water commissioners with power to control the construction of all improvements and additions thereto, etc., and legalizing all acts done by the city in relation to the acquisition of the plant and the contract entered into between the city and the private corporation for the sale of the plant, does not validate an invalid contract between the city and an individual made before the city acquired any water system whereby the individual should have charge for an indefinite period of the additions which might be made to the plant after its purchase by the city.

3. SAME.

A city contemplating the acquisition of a water supply plant of a private corporation employed an individual to estimate the value of the plant, together with a plan for extensions necessary to make the plant adequate, to aid in letting contracts, and to superintend the work of construction until the works were completed, for a specified compensation, a part of which should be retained by the city until the works were in successful operation. The city purchased the plant pursuant to Laws 1903, p. 26, c. 17, authorizing the purchase and creating a board of water commissioners to control the same. Held, that the individual who was paid for the services rendered in estimating the value of the plant and in preparing plans for extensions, could not, after the board had decided that the work proposed by him should not be done, demand additional compensation.

Appeal from Judgment on Report of Referee.

Action by Joseph F. Witmer against the city of Jamestown. From a judgment for plaintiff entered on the report of the referee to hear, try, and determine, defendant appeals.   Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Frank W. Stevens, for appellant.
Lincoln A. Groat, for respondent.

SPRING, J.   In 1901 and prior thereto the Jamestown Water Supply Company, a private corporation, was furnishing water to the city of Jamestown.   The citizens and municipal authorities were considering the project of a municipal water system either by purchasing the plant and equipment of the existing corporation or by installing a plant of its own.

For the purpose of giving intelligent direction to the consideration of these two projects, a written agreement was entered into February 15, 1901, between the plaintiff, a civil engineer, and the

defendant, by its mayor and clerk, whereby the plaintiff agreed to ascertain and report the cost of constructing a new water system, with a detailed plan, and also a detailed statement of the entire plant of the existing corporation and of its value, and a further estimate in detail of alterations and extensions required to make the system efficient and ample for the needs of the city. There are subsequent paragraphs of the agreement providing for the further employment of the plaintiff in the event of the city either establishing its own system or acquiring the one then in use, and these provisions of the agreement, which are decisive in the present case, will be considered more particularly hereafter. The agreement on behalf of the city was executed by its mayor and clerk in pursuance to a resolution of the common council directing it to be done.

It appeared that the common council, after the adoption of said resolution, had directed the board of public works of said city to investigate the cost of constructing or purchasing a water system for the city, and the whole preliminary work of such investigation was committed to that board. In order to make effective, the agreement with the plaintiff the board of public works entered into a supplementary written agreement with him employing him to do the work prescribed in the preceding agreement in so far as it related to the ascertainment of the cost of the two plants under contemplation by the municipal authorities. It was in effect a confirmation, a validation by the board of that part of the agreement, and expressly provided that the plaintiff should not be relieved from the performance of the obligations imposed upon him by the subsequent paragraphs contained therein. The plaintiff, in compliance with the agreement, made the preliminary investigations both as to the cost of constructing and installing a new plant and of the value of the one existing, and his work was acceptable to the defendant; and in September he presented his account to the city for $2,500, the compensation stipulated in the agreement, and was paid therefor. Subsequently, the board of water commissioners reported to the common council in favor of the purchase of the plant of the private corporation, and the council approved of it, and the matter was submitted to a vote of the resident taxpayers of the city who voted in favor of acquiring the plant for the sum of $600,000, and the purchase was made subject to whatever legislation might be necessary to render the acquisition valid. An act of the Legislature was passed in March, 1903 (chapter 17, p. 26, Laws 1903), authorizing the city of Jamestown "to acquire and maintain a water supply system." The act, among other things, authorized the issue of bonds to make the purchase, and provided for the organization of a board of water commissioners, to which was committed the entire control of the water system. The subsequent clauses of the agreement mentioned relate to work deemed necessary or proper after the purchase of the existing plant or in the construction of an entirely new system. For convenience in the discussion we will eliminate as far as practicable any further reference to the new system, for that plan was not adopted. The contract then provided for the employment of the plaintiff after the acquisition of

the existing plant as engineer in charge. His compensation was stated, and the range of his duties, which were general and plenary, was outlined. It is to be borne in mind that this contract of employment was made before any proposition to acquire the plant had been presented. The agreement was wholly anticipatory. Before the city of Jamestown ever became vested with the title to this system the municipal authorities must act favorably upon a definite proposition, and that proposition must be approved by the taxpayers at the polls. The acquisition of the water system, therefore, could not be made by the common council or the board of public works. The common council could not, before the city had acquired any water system at all, enter into the contract whereby the plaintiff was to have charge for an indefinite period of the additions which might be made to the plant it purchased.

I find no warrant in the charter of the city for any such unusual stretch of power, and it does not seem to come within the compass of their general duties. In fact, the counsel for the respondent apparently assumes that paragraphs 4 and 5 pertaining to the employment of the plaintiff in the event the system is acquired by the city are invalid. He claims, however, and the referee has found, that the curative act referred to infused life into this void agreement. Section 2 of this act (chapter 17, p. 26, Laws 1903), which has already been referred to and upon which the validation of the illegal agreement rests, reads as follows:

"All the acts of the board of public works, the common council and the mayor of said city, in relation to the acquisition of the water supply plant and water system of the Jamestown water supply company, the special election of the resident taxpayers of said city held on the fifteenth day of April, nineteen hundred and two, and the contract entered into between the Jamestown water supply company and the city of Jamestown for the sale of its water supply system to said city for six hundred thousand dollars, dated May twenty-eighth, nineteen hundred and two and the bonds proposed to be issued are hereby, in all things ratified and legalized."

The employment of the plaintiff to supervise the enlargement of the plant, if procured, had no relation to its acquisition. The work he was to perform pertained wholly to improvements and additions which could only be made if the city became the owner of the property. The acquirement of it by the city must be an accomplished fact, and the new board must be installed before the plaintiff could commence to make the improvements. The extent of the improvements, or whether any should be made, depended upon the action of the board of water commissioners. The plaintiff had no discretion to make additions unless they were ordered by the board. All the acts he could perform by virtue of these paragraphs of the agreement, therefore, related to a time subsequent to the acquisition of the water system by the defendant. The legalizing clause is a common one in statutes of this kind, and is intended to remedy any defects in procedure which may embarrass the municipality in the future—like selling the bonds to be issued to carry on the work, or in other ways which might be suggested. There may have been doubt as to the power of the city to acquire the plant without authority from the Legislature, and one of the purposes of the act may have been to legalize the purchase. It

was not intended by the act to continue the control of the common council or the defunct board of public works over the water system which had been purchased by the city. The act itself provided for the creation of a new board, vesting in it the complete management of the municipal water system. It is not reasonable to believe that the same act stripped the new board of a large measure of its management by turning it over to the plaintiff. If so, the functions of the present board would be supplanted to a considerable degree. An extract or two from this act will disclose the legislative intent to vest the board with the complete control of the water system.

In section 7 it is provided that:

"The system of waterworks, when acquired as hereinbefore provided, shall be under the control and supervision of the board of water commissioners, * * * After a system of water works has been acquired or established, the board of public works shall have no power or duties in relation thereto, or in relation to additions thereto or extensions thereof; but the board of water commissioners shall have the control of the construction of all improvements and additions thereto or extensions thereof. Said board shall have the power to make all contracts necessary or incidental to the execution of the powers conferred by this act."

The employment of a superintendent and "all servants necessary for the performance of the work done under the direction of the board" is given to this board, and, of course, the authority is essential for its efficiency.

In section 8 is the following:

"Said board of water commissioners shall have full control of said system of waterworks and everything pertaining thereto."

The enforcement of this agreement would tend to deprive the board of water commissioners of much of the control with which the Legislature was careful to endow it. In view of that fact, the language of the statute legalizing as it is claimed that part which is the foundation of the plaintiff's cause of action should receive a fairly strict construction. The clause at least should not be enlarged beyond its reasonable meaning to enable the plaintiff to recover where no recovery could otherwise be had. There are many acts, subsequent to the agreement with the plaintiff by the municipal authorities, all having relation to the acquisition of the plant by the defendant, and to which the language in section 2 is applicable.

We may assume the construction of this remedial clause is a debatable proposition, and let us examine the agreement with the plaintiff, and endeavor to ascertain its import as if it were a valid enforceable instrument. By the terms of his agreement with the defendant the plaintiff was to estimate the value of the plant and equipment of the Jamestown Water Supply Company, together "with a further detailed plan and estimate of the cost of any and all alterations and extensions that may be found necessary to make such system adequate and efficient for the proper supply of water to the city of Jamestown." In pursuance of this agreement, the plaintiff reported that the cost of making extensions and improvements to the existing plant would be over $267,000; and with some modifications and omitting a reservoir, which he recommended, the improvements could be made for $150,000.

These large expenditures are significant in arriving at the true meaning of the agreement. By paragraph 4 of the agreement, the plaintiff, if the plant of the supply company is acquired by the city, is "to prepare detailed working drawings and plans, specifications, etc., covering the contemplated improvements," and to aid in letting contracts, and to superintend the work of construction "from the time the contracts are let until the works are completed and in successful operation."

It is reasonable to assume that the superintendence and work have reference to substantial permanent additions and improvements to the general system, and not to refer to the ordinary extensions which are required because of new patrons, the opening of new streets, or other similar causes. These ordinary expenditures would not call for the presence or supervision of an engineer. Additions of this kind, if made in pursuance of a contract, would not demand the attention of an engineer during the entire time the work was in progress.

The fifth paragraph provides for the compensation of the plaintiff "for the engineering and superintendence provided for" in the preceding paragraph, which, as already suggested, seems to relate to substantial additions. For "new construction work" he is to receive 4 per cent. of the "amount actually expended," which is a ponderous phrase if it relates to the short extension of a line in a street. If the plant of the supply company is purchased, he is to receive 2 per cent. of the purchase price.

To recapitulate: If a new plant was constructed, which would be at an expenditure of $600,000 to $700,000 or upwards, he was to receive 4 per cent. of the amount expended, or from $24,000 to $28,000. According to the interpretation of the plaintiff, and which had been adopted by the learned referee, providing the supply company system was purchased, if any extensions whatever were made the plaintiff would be entitled to $12,000 for his percentage on the purchase price, less the $2,500 paid him for the preliminary work, and which was to be deducted in any event. In addition, he was to be paid the 4 per cent. on the amount expended for additions. During the first year after the city acquired the plant the expenditures for new work amounted to $8,785.10. The actual value of the plaintiff's services in performing this new work at 4 per cent. would be less than $360; and yet, according to his claim, he is entitled to his percentage on the purchase price—or $9,500—or more than the entire cost of the improvements made.

Further along in this paragraph it is provided:

"After deducting the $2,500, the remainder of the percentage shall be paid as follows, viz.: 60% of the whole thereof shall be paid in monthly installments as the work progresses, a proportionate amount of the whole being paid each month as near as it can be ascertained from the progress of the work of construction. The balance of 40% to be retained by the city until the works are completed and in successful operation, and accepted by the city, when the balance of 40% is to be paid."

If the plaintiff is to be the engineer in charge for a series of years—for some new work will inevitably be required each year—it will be impossible to carry out the plan outlined in this clause. The full per-

centage on the sum paid for the plant ought not to be due him immediately upon making the first slight addition. Unless this is done, it is not clear how 60 per cent. "of the whole thereof" is to be paid as "the work progresses," for there will be work progressing each year. The retention of the 40 per cent. "until the works are completed and in successful operation and accepted by the city" again indicates that the parties had in mind substantial improvements involving large expenditures of money to add to the efficiency of the system if the supply company's plant should be acquired. The construction of the new system and the additions to be made to the old plant, if acquired, were carried along together in the contract, indicating that as to each a large expenditure of money would be required. The clauses, otherwise difficult of solution, are readily comprehensible and interchangeable if they relate to substantial work to be completed within any definite period. I think it was not contemplated that the plaintiff should remain in charge for a long period of years. It was expected, if the purchase was made, that these definite and large improvements should be made speedily, if at all. According to the plaintiff's plan they were desirable or necessary to complete the plant. When they were added, the works would be "in successful operation," and his obligations to the defendant would be at an end. Whether contemplated new work was authorized depended upon the new board or whatever body had the matter in charge. The board never authorized the work to be done, and advised the plaintiff it was not contemplating any such extensions. The plans which he made were like those generally used by him in hydraulic engineering, and were readily adaptable to any water system, and there is no claim that the sum paid for the preliminary work was not adequate compensation for the services rendered. Undoubtedly, the plaintiff expected further employment. As he "took his chances" whether a new plant would be constructed or the old one purchased, so he "took his chances" whether the extensive improvements he advised would be adopted.

The judgment should be reversed.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide event. All concur.