THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE SIDNEY WATER WORKS COMPANY and Others, Relators, *v.* THE CONSERVATION COMMISSION OF THE STATE OF NEW YORK and the VILLAGE OF SIDNEY, Respondents.

Third Department, November 15, 1916.

Village — proceedings to establish village water works — application to Conservation Commission for certificate of public necessity — finding that private water company now in operation can furnish adequate supply — when certificate should not be granted — power of Appellate Division on appeal.

Although the taxpayers of an incorporated village vote to establish a municipal water plant, they must obtain permission to build from the Conservation Commission which must find that the proposed plant is justified by public necessity.

Where the voters of a village voted to establish a water plant chiefly on account of resentment against a private water works company already in operation and the Conservation Commission finds as facts that the present water supply is ample, that the proposed new supply will not furnish water of as good quality or furnish as complete fire protection as the existing plant, and that the proposed source of the new supply can never equal the source of supply of the existing system, it was error for the Commission, in the face of these findings, to authorize the construction of the new plant and the Appellate Division will remit the matter to the Commission for further consideration.

Where the existing water company in open court agrees to the condemnation of its properties and to abide by a valuation to be fixed by commissioners to be appointed by the court, the Appellate Division will dispose of the controversy without sending the matter back to the Commission if the offer should be accepted by the village.

**6** PEOPLE EX REL. SIDNEY W. W. CO. *v.* CONSERVATION COMM.

Third Department, November, 1916. [Vol. 175.

CERTIORARI issued out of the Supreme Court and attested on the 10th day of May, 1915, directed to the Conservation Commission of the State of New York, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in approving an application by the village of Sidney, N. Y., for the construction of a municipal water system.

*Andrus & McNaught* [*C. L. Andrus* of counsel], for the relator Sidney Water Works Company.

*Jerome S. Seacord*, for the relators William H. Pierce and others.

*James P. Hill*, for the relators Bishop A. Fleming and others.

*Robert E. Whalen* and *Henry J. Sadler*, for the respondent Village of Sidney.

*Egburt E. Woodbury, Attorney-General*, for the respondent Conservation Commission.

HOWARD, J.:

The taxpayers of the village of Sidney, in Delaware county, N. Y., voted on December 29, 1913, by an overwhelming majority in favor of a municipal water plant. There can be no doubt, therefore, that the taxpaying citizens of the village believe that public necessity requires the establishment of a system of water supply, to be owned and operated by the municipality — a system supplanting the system owned by the Sidney Water Company by which the village is now supplied. But the opinion of the taxpayers was not sufficient to warrant the village authorities in proceeding with the project. Sections 521 and 522 of the Conservation Law (Consol. Laws, chap. 65; Laws of 1911, chap. 647) required that the matter be submitted to the Conservation Commission, and that its approval be obtained, before the municipality could proceed with the establishment of a water system of its own. Acting in conformity to this statute the board of trustees of the village of Sidney made application to the Conservation Commission for permission to build and establish a water plant. The Com-

mission, after hearing much evidence, has determined that the creation of the proposed new plant is "justified by public necessity," and has, accordingly, granted permission to build it.

Therefore, in reviewing this determination, we are called upon to discover, if possible, whether there is any basis of fact upon which to rest the conclusion of the Commission that public necessity requires the building of a new system of water supply for this village. We cannot, of course, substitute our judgment for that of the Commission. We do not assume to do so; but if the order of the Commission was arbitrary and palpably contrary to the facts, we may restrain this unlawful assumption of power. (*People ex rel. New York & Queens Gas Co.* v. *McCall,* 219 N. Y. 84.)

In order to determine whether public necessity requires a municipality to embark in any enterprise, the situation must be viewed from every angle, and the evidence submitted must be weighed in the light of common human experience. Allowance must be made, not only for the solid, deliberate convictions of the taxpayers, but for their feelings, their resentment, their indignation and the atmosphere which surrounds them. A careful and thorough study of the enormous record which comes to us from the Commission convinces us that the action of the village taxpayers was influenced quite as much by resentment towards the Sidney Water Works Company as by solicitude for their own needs and requirements. The water company seems not to have been always altogether wise in its relations with the village authorities — perhaps not always fair. But whatever may be the merits of the controversy, friction seems to have developed between the company and the village with the result that the villagers have resolved to establish a water plant of their own and sever relations with the water company. Unfortunately neither the Conservation Commission nor any other State department is vested with authority to order the water company to make changes or direct its methods of operation. Had the Commission been clothed with such authority it could undoubtedly have composed the troubles arising here and granted relief to the village without imposing hardship upon the water company. But, as we have intimated before, the taxpayers may have been goaded

into their determination to resort to drastic measures by resentment towards the water company. Our scrutiny of the record leads us to the conclusion that this is true.

The Sidney Water Works Company is somewhat imperfect in many particulars — in its rather arbitrary methods of operation; in the volume of supply; in the quality of the water furnished; in its present limited storage capacity; in its somewhat restricted facilities for fighting fires. It must be admitted that in these particulars the Sidney Water Company could be much improved. Without doubt it should be so improved. But conceding these defects, which are greatly amplified in the record and meagerly stated here, the question remains whether "public necessity" would justify the building of a new plant at the expense of the taxpayers.

One hundred and twenty-five thousand dollars has been voted for the purpose of constructing the new plant; but considering the requirements imposed by the Commission in addition to the original plans of the engineer employed by the village, it seems quite probable to us, taking into account conditions as they are to-day, that the actual cost of the new plant would far outreach the amount contemplated by the taxpayers. The village of Sidney has a population estimated at 2,850. When the petition was presented its property was assessed at $629,100, and its bonded indebtedness was about $29,852. Therefore, the probable cost of the new plant is a consideration which must be weighed by us in determining whether "public necessity justifies" its erection — justifies the monetary outlay. Have the taxpayers deceived themselves in their estimate of the cost? Looking at it coolly at this distance from the situation, we suspect that they have. The Commission seems to have harbored the same suspicion, for it suggests that perhaps the cheapest way for the village out of the difficulty would be for it to buy out the Sidney Water Company.

The opinion written by the Commission summarizes the contents of the record quite correctly and states the facts fairly and frankly. Standing out conspicuously in the opinion (conspicuous considering the conclusion which the Commission has reached) are certain expressions which we are about to

quote. Very briefly we have attempted to refer to certain defects in the present water system — defects which might seem to point to a "public necessity" for a new and more efficient system. Therefore, we shall only quote those extracts from the opinion of the Commission which seem to point the other way. The opinion says:

"Since the construction of Peckham reservoir in 1908 there has been no failure of the water supply of this company.  *  *  * If meters were installed and other means taken to curtail waste, it is probable that the present source of supply would give sufficient water for the needs of the inhabitants of this village. *  *  * It appears that by proper modification the present system of the Sidney Water Works Company could be made to meet all reasonable requirements, but such modifications have not been made, nor does any way appear whereby the making of them can be assured.  *  *  * Also, as this lake [Guilford Lake] has a watershed of but three square miles the ultimate yield therefrom can never be equal to the ultimate yield from the Collar and Peckham Brook watersheds [owned by the Water Company] which aggregate eight square miles. Chemical and bacteriological analyses of the water of this lake were submitted. They indicate that at times this water would be safe for drinking under present conditions, but they also show that the quality is not always uniform. An inspection of the watershed shows that there are numerous cottages close to the margin of the lake, that there are some farm houses on the watershed and that a highway and a railroad are so close to the shores thereof as to constitute a certain sanitary menace. The lake is used for boating, bathing, fishing and the cutting of ice, all of which uses increase the danger from the use of this water for drinking purposes. At certain seasons of the year there will undoubtedly be some trouble from algae, which will cause disagreeable tastes and odors in the water.  *  *  * The system proposed to be installed by the village, while it will probably give an adequate amount of water, will not supply water of suitable quality or give fire protection as good as that afforded by the existing system. It does not appear that public necessity would justify the installation of another unsatisfactory water supply system in this village, and, to

**10**   PEOPLE EX REL. SIDNEY W. W. Co. *v.* CONSERVATION COMM.

Third Department, November, 1916.        [Vol. 175.

justify the entrance of the village into competition with the existing water company, with the inevitable damage which will result to the company and the equally inevitable loss of revenue which the village will suffer due to competition from the company, it must be clearly shown that the proposed municipal system will give more and better water and more adequate service in all respects than the existing system. This the project as presented will not do.   *   *   *   Unless the reservoirs on Collar Brook [owned by the Water Company] are empty or disconnected from the distribution system the present water supply system in Sidney gives better fire protection than will be given by the proposed municipal system.   *   *   * Alternate sources for a municipal water supply for the Village of Sidney exist and it does not appear that Guilford Lake is either the best or the cheapest of the available sources.   This village is now supplied and has long been supplied with water from Collar and Peckham Brooks [owned by the Water Company] and it has statutory authority to acquire, by purchase or condemnation, either or both of these watersheds.   It is by no means evident that the cheapest and simplest method of obtaining a municipal water supply for this village would not be by the purchase of the works of the Sidney Water Works Company.   Peckham and Collar Brooks are the natural and logical sources of supply for this village and are amply able to supply the reasonable needs thereof for many years to come.   *   *   *   In this case the Village of Sidney desires to obtain a new and additional source of water supply, although entirely ample sources of supply are now in use for the purpose of supplying the inhabitants of this village with water.   Furthermore the sources now in use are the logical and proper sources for Sidney, whereas the proposed source of supply (Guilford Lake), is the logical and proper source of supply for the inhabitants of the unincorporated Villages of Guilford and East Guilford and other portions of the Town of Guilford and these waters have long been used to supply the inhabitants of the above-mentioned unincorporated villages."

Having made all these statements in its opinion, it is difficult for us to understand how the Commission could conclude that the village ought to be permitted to launch into the

expensive project of a new, inferior, imperfect, improper water plant.  Having stated that the village has now an entirely ample supply of water, it certifies to the necessity for a new supply.  Having stated that the new proposed system will not supply water as good, or fire protection as complete, as the present system, the Commission directs the inferior system to supplant the superior one.  Having pointed out that the ultimate supply from the new proposed source (Guilford lake), containing three square miles of watershed, can never equal the present supply with watersheds covering eight square miles, the Commission certifies to the necessity for the insufficient and lesser supply.  After declaring that Guilford lake is neither the "best" nor the "cheapest" place for the village of Sidney to get water, the Commission directs the village to choose this lake as the source of its supply.  Declaring the Sidney Water Company's sources to be the "logical and proper sources," the Commission, nevertheless, permits the village to reject these sources and resort to waters which are neither logical, proper, fit nor cheap.  It is beyond us to comprehend this.  The order made by the Commission is wholly inconsistent with the opinion written by it, and inconsistent with the report of its engineer.  Even with the modifications suggested by the Commission, and the additions and alterations insisted upon by it, the order of the Commission seems to us to have been unadvisedly granted.  The order was an arbitrary exercise of authority; based on no facts and being contrary to the facts found by the Commission.

We believe that the matter should be remitted to the Commission for further consideration, and we so order.  It may be thought wise by the Commission to receive further evidence on the subject of the probable cost of the additional requirements insisted upon.  This would not only enlighten the taxpayers as to the extent of the burden they are assuming, but would be of assistance to this court in determining the power of the Commission to order modifications which will entail expense beyond the vote of the taxpayers, in case of further review.

The Sidney Water Works Company, in open court at the time of the argument before us, proposed to allow this court to appoint three commissioners in condemnation proceedings

for the purpose of fixing the value of its property and to pay the expense of these commissioners and abide by the result of their determination. If the village should think it wise to accept this offer such a conclusion would dispose of this matter in lieu of our order sending the matter back to the Commission.

All concurred.

Determination annulled, with fifty dollars costs and disbursements to the relator to abide the event, and matter remitted to the Commission for further consideration.