RANDOLPH L. BROWN, Suing in Behalf of Himself and Others, Appellant, *v.* FREDERICK A. WARD et al., Constituting the Board of Supervisors of the County of Cortland, et al., Respondents.

Taxpayer's action — counties — supervisors — bridges — power of board of supervisors to provide for construction of bridge — provision of Highway Law in regard thereto must be substantially complied with — tax levied for cost of constructing bridge void where proceedings leading to contract and contract itself were not in substantial compliance with statute — public officers without power to contract except as directed by statute.

1. No power is vested in a board of supervisors to build bridges, or to ratify the acts of its committee in contracting for the erection of a bridge, except by complying substantially with the provision of section 262-a of the Highway Law which directs that the provisions of section 130 shall apply to the award, execution and fulfillment of contracts for bridge improvement by a board of supervisors. They

contain plain and simple directions for the conduct of supervisors, and design that definite plans, specifications and estimates must be approved by such boards and that prospective bidders shall have reasonable access to them at a specified time and place so that the lowest bidder for a particular type of bridge may be ascertained.

2. Where in a taxpayer's action to have adjudged void a tax levied against a town by a board of supervisors for the cost of construction of a bridge and culvert, the uncontradicted evidence proves that for a reinforced concrete bridge, plans, specifications and estimate of expense were submitted for a steel truss bridge, that the board attempted to delegate to a committee the power to enter into a contract for the construction of undefined and unspecified bridge work, that the committee, in the absence of an estimate of expense, advertised for bids for a concrete bridge, the plans and specifications for which were to be submitted by the contractor without approval by the board of supervisors, but to be approved by the State Highway Commission, and that the committee entered into a contract for the construction of a concrete bridge and a smaller culvert without approval by the board of supervisors or without providing any reasonable basis for competition among bidders, it cannot be said that the proceedings leading up to the contract and the contract itself were in substantial compliance with the statute. The tax was, therefore, void and its collection should be enjoined at the behest of property owners subject to a valid tax.

3. Ratification by the board of supervisors of the committee's acts is unavailing and a finding that all parties acted in good faith is not enough. Public officers have no power to contract, except in the manner which the statute directs, and substantial compliance therewith is requisite.

*Brown* v. *Ward*, 218 App. Div. 643, reversed.

(Argued October 26, 1927; decided November 22, 1927.)

APPEAL from a judgment, entered January 13, 1927, upon an order of the Appellate Division of the Supreme Court in the third judicial department, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and directing a dismissal of the complaint.

*Frank H. Hiscock* and *O. U. Kellogg* for appellant. The action of the board of supervisors in attempting to

26

confer upon a committee of its members the power and authority, under section 262-a of the Highway Law, "to advertise for bids and to enter into a contract in the name of the board of supervisors for a construction of such bridge work as might be necessary for the proper completion" of the highway to be constructed was illegal, and the endeavor of the board of supervisors to cure this illegal attempt to confer powers upon the committee by subsequently ratifying its conduct was ineffectual. (*Matter of Hardy* v. *Duffey,* 101 Misc. Rep. 641; 182 App. Div. 903; *Brady* v. *Mayor,* 20 N. Y. 312; *Bishop* v. *New York Times Co.,* 233 N. Y. 466.) Plaintiff is entitled to maintain this action and his complaint in that respect states a good cause of action. (*Bush* v. *O'Brien,* 164 N. Y. 205; *Western New York Water Co.* v. *City of Buffalo,* 242 N. Y. 202; *Steele* v. *Village of Glen Park,* 193 N. Y. 348; *Guenther* v. *Patch,* 76 Misc. Rep. 649; *Elmhurst* v. *City of New York,* 213 N. Y. 87; *Rumsey* v. *City of Buffalo,* 97 N. Y. 114; *County of Monroe* v. *City of Rochester,* 154 N. Y. 570; *Ellwood* v. *City of Rochester,* 122 N. Y. 229; *Scott* v. *Onderdonk,* 14 N. Y. 1.)

*Clayton R. Lusk* and *Charles H. Gardner* for respondents. There was a substantial compliance with the provisions of section 262-a of the Highway Law. (*Kent Constr. Co., Inc.,* v. *New York,* 212 App. Div. 197; *Fleming* v. *Village of Suspension Bridge,* 92 N. Y. 368; *People ex rel. Keene* v. *Queens County Supervisors,* 142 N. Y. 271; *Edwards* v. *City of Watertown,* 24 Hun, 426; *People ex rel. Vaughn* v. *Supervisors,* 52 Hun, 446; 119 N. Y. 636; *Kramrath* v. *City of Albany,* 53 Hun, 206; 127 N. Y. 575; *Robert* v. *Supervisors,* 3 App. Div. 366; 158 N. Y. 673; *People* v. *Meach,* 14 Abb. Pr. [N. S.] 429; *Renting* v. *Titusville,* 175 Penn. St. 512; *Crawford County* v. *Walter,* 89 Ill. App. 7; *Hitchcock* v. *Galveston,* 96 U. S. 341.) If the board of supervisors did not have power

to delegate to the highway committee the authority to
receive bids and construct the bridge work specifically
contained on the State plans for such highway, they
cured the defect by expressly ratifying the acts of the
highway committee. (*Peterson* v. *Mayor, etc.,* 17 N. Y.
449; *Moore* v. *Mayor,* 73 N. Y. 238; *Kramrath* v. *City
of Albany,* 127 N. Y. 575; *Albany City Nat. Bank* v.
*City of Albany,* 92 N. Y. 363; *Vermeule* v. *City of Corning,*
186 App. Div. 206; 230 N. Y. 585; *Squire* v. *Cartwright,*
67 Hun, 218; *People ex rel. Griffiths* v. *Board of Supervisors
of Oneida County,* 143 App. Div. 722.) A taxpayer's
action does not exist here under section 51 of the General
Municipal Law. (*Altschul* v. *Ludwig,* 216 N. Y. 459;
*Western New York Water Co.* v. *City of Buffalo,* 242 N. Y.
202; *Bush* v. *Coler,* 60 App. Div. 56; 170 N. Y. 587;
*Ayers* v. *Lawrence,* 59 N. Y. 192; *Shoemaker* v. *Buffalo
Steam Roller Co.,* 165 App. Div. 836; *Kramrath* v. *City
of Albany,* 127 N. Y. 575; *Moore* v. *Mayor, etc.,* 73 N. Y.
238; *Cobb* v. *Ramsdell,* 59 Hun, 627; *Edwards* v. *Ford,*
22 App. Div. 277; *Lawson* v. *Lincoln,* 86 App. Div. 217;
*McCord* v. *Lauterbach,* 91 App. Div. 315.)

O'BRIEN, J. Plaintiffs, taxpayers in the town of
Taylor, Cortland county, seek a judgment adjudicating
as illegal and void a tax of $20,116.98 levied against the
town by the board of supervisors for the cost of con-
struction by the county of a concrete bridge across the
Otselic river and for the repair of an adjacent culvert
known as the Martin Wire bridge. These improvements
are wholly within the town of Taylor. In the construc-
tion and in the distribution of the cost between the town
and the county the board assumed to act pursuant to
authority conferred upon it by the provisions of section
262-a of the Highway Law (Cons. Laws, ch. 25). The
taxpayers urge that the contract for this public improve-
ment is so fundamentally illegal that it is not susceptible
of ratification by the board of supervisors.

The new findings as made by the Appellate Division and the evidence which is claimed to support them demand a brief recitation.   Upon motion of the supervisor of Taylor, the board by resolution of December 26, 1923, directed the county superintendent of highways to prepare maps, plans and specifications for a bridge across the Otselic river and for the extension of the Martin Wire culvert and submit them to the board.   The superintendent submitted plans and specifications for a steel truss bridge over the Otselic but none for the Martin Wire culvert.   At the same time he recited from memoranda concerning an existing steel truss bridge in the town of Willet an oral estimate of $20,000 for the Otselic steel bridge and for the culvert. He arrived at this sum by allowing $17,027.50 for the large steel bridge, $1,500 or $1,600 for the culvert and $1,382.50 for plans and cleaning of channel.   His report on the Otselic bridge related solely to a steel structure and in no way referred to a concrete bridge.   By resolution of October 6, 1924, the board approved the plan for a steel truss bridge, similar to the one in the town of Willet, and assumed to delegate to the highway committee authority to advertise for bids and to enter into a contract in the name of the board for the construction of " such bridge work as might be necessary for the proper completion of the Cincinnatus-Taylor-Pitcher Part *LI* Federal Aid State highway No. 8161 in the town of Taylor, in accordance with the maps, plans and specifications specifically contained on page 4 of the plans of such highway theretofore prepared by the State Commission of Highways and theretofore approved by the board of supervisors on the 25th day of April, 1923, and the 10th day of September, 1923."   The maps, plans and specifications of this highway defined the location as well as the length and breadth of a new bridge to be built over the Otselic river and the location and extension of the Martin Wire bridge, but did not describe in any way the type, material or form of construction of these pro-

posed bridges. The resolution assuming to delegate to the highway committee the power to advertise for bids and to enter into a construction contract did not ordain whether the bridge should be constructed of steel or concrete. The committee advertised for bids for both steel and concrete, but the advertisement included the statement that plans and specifications of the steel truss bridge might be obtained from the county superintendent of highways and that plans and specifications " to be submitted by contractors " for a reinforced concrete structure which shall have the same carrying capacity, water way clearance and depth of roadway as the steel truss bridge " must have the approval of the department of highways of the State of New York and will be considered by the committee in making the awards." The board never approved plans or specifications for a concrete bridge but left that function to the State Highway Commission. On October 21, 1924, the highway committee of the board of supervisors entered into a contract for the construction of a reinforced concrete bridge across the Otselic and for the lengthening of the Martin Wire bridge for the sum of $12,000 plus some additional price for the large bridge and $30 per cubic yard for lengthening the smaller one. The superintendent later entered into an oral contract for backfilling the highway at an expense of $708.

The uncontradicted evidence proves, therefore, beyond the shadow of a doubt that for a reinforced concrete bridge across the Otselic, plans, specifications and estimate of expense were submitted for a steel truss bridge, that the board attempted to delegate to a committee the power to enter into a contract for the construction of undefined and unspecified bridge work, that the committee in the absence of an estimate of expense advertised for bids for a concrete bridge the plans and specifications of which were to be submitted by the contractor without approval by the board of supervisors but to be approved

by the State Highway Commission and that the committee entered into a contract for the construction of a concrete bridge and a smaller culvert without approval by the board of supervisors or without providing any reasonable basis for competition among bidders. Any new finding by the Appellate Division contrary to such evidence is wholly unsupported. Ratification by the board of the committee's acts is unavailing, unless the board itself was authorized in the first instance to do the things performed by the committee. No power was vested in the board to build these bridges or to ratify the acts of its committee except by complying substantially with the provisions of section 262-a, Highway Law. The ultimate issue in the case is whether the proceedings leading up to the contract and the contract itself were in substantial compliance with this statute.

Section 262-a requires submission to and approval by the board of supervisors of plans, specifications and estimate of expense in relation to a particular type of bridge expressly proposed to be built. No compliance was had with this provision. Plans, specifications and estimates for a steel bridge have no relation to a concrete bridge even when the board is aware of its necessary length, breadth and location. As well submit for a stone structure when a brick one of equal dimensions is to be built. Section 262-a directs that the provisions of section 130, Highway Law, shall apply to the award, execution and fulfillment of contracts for bridge improvement by a board of supervisors. These statutory enactments have been utterly ignored. Subdivision 1 of section 130 commands that the advertisement for proposals shall state where the maps, plans, specifications and estimate may be seen. These documents so enumerated can mean nothing except documents relating to a definitely described bridge and not to some other bridge casually mentioned. No attention was paid to this law. The notice stated that such plans and specifications for a concrete bridge

as might be approved by the State Highway Commission could be submitted by contractors, thus admitting on its face that none had been approved by the board of supervisors. Subdivision 2 of the same section requires the bidder to specify the gross sum as well as the amount to be charged for each item specified in the estimate. There was no estimate for a concrete bridge and so bidders could not obey this law. Subdivision 3 of section 130 says that the contract shall be awarded to the lowest responsible bidder and that he shall be deemed to be the one who specifically states the lowest gross sum, including all the items specified in the estimate. No bidder could comply with this requirement because the board had never taken any action respecting a concrete bridge. The lowest bidder is intended to be selected on the basis of definite plans and specifications. Identity of the lowest bidder might not, therefore, be ascertained and we cannot discover any evidence tending to support a finding that the contract was economical. It may or may not have been reasonable in price. How can any one know? The fact that the board of supervisors had at one time approved the plans of the State Highway Commission for the highway upon which these bridges have been built and that the State Commission provided for bridges at the points where they have been built and that pamphlets issued by it described generally the requirements for steel bridges and concrete bridges will not help to sustain this judgment. We cannot disregard the obvious intent of sections 262-a and 130 of the Highway Law. They contain plain and simple directions for the conduct of supervisors. They design that definite plans, specifications and estimates must be approved by such boards and that prospective bidders shall have reasonable access to them at a specified time and place so that the lowest bidder for a particular type of bridge may be ascertained. The courts below have found as a fact that all parties acted in good faith. This is not

enough. Public officers have no power to contract except in the manner which the statute directs. Courts ought not to insist in every instance upon literal obedience to the law. Substantial compliance will be sufficient. Here we cannot avoid perceiving the most patent disregard of simple and necessary statutory requirements.

Appellants have argued also that the apportionment of the expense at the ratio of ninety-nine as to the town to one as to the county is so inequitable as to require correction. Discussion of this question is unnecessary in view of our decision that the contract is invalid. Since the expenses which form foundation for the tax were incurred in violation of law, the tax is void and its collection must be enjoined at the behest of property owners subject to a valid tax. The Legislature might in the first instance have authorized the supervisors of Cortland county to build these bridges as they did build them. It could have imposed any part of the expense upon the county or any part upon the town. The power of dispensation still resides where it originally existed. We cannot validate the tax.

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in the Appellate Division and in this court.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS, LEHMAN and KELLOGG, JJ., concur.

Judgment accordingly.