**OLTARSH v. BRATTER et al.**

No. 314.

Circuit Court of Appeals, Second Circuit.

April 6, 1931.

Hartman, Sheridan, Tekulsky & Pecora, of New York City (Charles A. Winter, of New York City, of counsel), for appellants.

Joseph Sterling, of New York City, for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff sued the defendants for the breach of a contract by which he was to receive twenty-five thousand dollars and certain shares of stock, in consideration of his procuring for them a plot of land, securing a loan upon it of $900,000, and preparing plans for, and supervising the erection of, a building which should contain a moving picture theatre. The plaintiff's evidence permitted the jury to find that he had secured the plot and perhaps the loan as well, and was by way of proceeding with the project when the defendants told him that they could not complete and repudiated the contract. Thereupon, according to his story, they suggested to him that he try to procure a lease of the land, the owners to erect the building, and the defendants to be lessees at a specified rental. This proposal the defendants agreed should not terminate the existing obligations; and in any event, in case they bought the land, or leased it, the plaintiff should have his pay quite as though they had gone on with the original agreement. Concededly, the plaintiff failed to get the lease from the owners for the defendants, who thereafter bought the land themselves and put up the building without the plaintiff's help. The breach assigned was this elimination of the plaintiff from the transaction.

The defendants' evidence was that the plaintiff had never obtained the loan, and that he announced his inability to proceed at the interview when the question of a lease arose. They said that at that time he entered into a contract with them, to buy the property himself, put up the building at his own cost and lease it to them, he to have the rent and a quarter interest in the lessee corporation. In confirmation of this they relied upon a written contract by which they, acting in the name of a corporation which they controlled, promised to accept a lease from the plaintiff of such a theatre to be put up according to his plans and specifications, at a rental of $45,000. This was on March fifth, the same day on which the plaintiff said that he had agreed tentatively to try to get a lease for them from the owners. In a letter written on March eighth to the defendants' representative, the plaintiff wrote as follows: "I do not know whether you were told by Bratter and Pollak, but the other day when I was there I finally agreed with them to give them a lease on the property and they agreed to enter into such a lease for a specific amount. I do not know how well you know them, but I am afraid after I have the land purchased and have my deal closed, I may run

into a snag and find myself with the land and the theatre and they not properly tied up in the financial way."

The District Judge left it to the jury to say whether the parties had abandoned the original agreement and substituted the agreement by which the plaintiff was to give the defendants a lease. If so, there could be no recovery; if not, the jury might find that the original contract continued, and the defendants were liable. The jury found for the plaintiff and the defendants appealed.

 We need only consider the exception to the sufficiency of the proof at the close of all the evidence. The case failed, if it then appeared that the original contract had been abandoned, and that in its place there remained only the agreement that the plaintiff should procure the land, build the theatre and give the defendants a lease. The plaintiff had not pleaded such a cause of action and made no effort to prove that he could have procured the land from the owners, or built the theatre. Even though the defendants deprived him of his opportunity to do so by stepping behind him before his time was up, that did not dispense with some proof that he would himself have been able to perform, New York Trust Co. v. Island Oil & Transp. Corp., 34 F.(2d) 653 (C. C. A. 2). He could therefore recover only on the theory that the original contract continued, and indeed it was on this that he relied.

 It was conceivable that the second agreement should have been tentative, a substitute only in case the plaintiff could buy the land and finance the project; and in the event of the plaintiff's failure to do so, that the defendants were to remain liable upon the original contract. But neither the offer of March fifth, nor the plaintiff's letter of March eighth, suggested anything of the sort. We infer little or nothing from the offer, which might indeed contain no reference to the situation in case the agreement broke down; but it seems to us most unlikely that the plaintiff should have used the language he did in the letter of March eighth, if the agreement was conditional upon his success. When he wrote, "I finally agreed with them to give them a lease on the property, and they agreed to enter into such a lease," it was scarcely the language of one who has done no more than agree to try to extricate the other party from a contract which has become onerous. Clearly the two contracts, if "finally agreed" upon, could not exist side by side; the owners could not at once sell the property to the defendants, and the plaintiff buy it and give them a lease. The plaintiff might still be entitled to more than the prescribed rental, indeed, to his original compensation; but his performance was not the same, and he could earn his pay only in case he performed.

But though the letter of March eighth be not alone a sufficient contradiction of the possibility that the actual agreement of March fifth was conditional on the plaintiff's success in getting the land himself and putting up the building, he said nothing of such a condition. He did not assert that he had tentatively agreed to buy the property, put up the building, and lease it to the defendants, meanwhile reserving his rights in the case of his failure. According to his version, he was only to act as an intermediary between the defendants and the owners in getting them to put up the building and give the lease. That was quite a different transaction. That version the documents conclusively contradicted; we may say positively that no such arrangement was ever made between the parties, and no jury which understood their import could have so concluded. With this testimony eliminated, there remained only the defendants' own testimony and the documents themselves, and there was nothing to show that the second contract was conditional upon the plaintiff's success in getting the land and putting up the building. The jury was certainly not entitled to read the plaintiff's testimony as referring to the agreement actually made, even if the letter of March eighth was not a sufficient contradiction, were it so read. The defendants should have had a directed verdict.

Judgment reversed; new trial ordered.