### POTTS v. VILLAGE OF HAVERSTRAW.
#### No. 442.

Circuit Court of Appeals, Second Circuit.
July 22, 1935.

Ernest W. Hofstatter, of Nyack, N. Y. (Monroe J. Cahn, of White Plains, N. Y., and Humphrey J. Lynch, of New York City, of counsel), for appellant.

Clark, Sickels & Barton, of New York City (Arthur L. Barton, of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff, a civil engineer, skilled in designing and building municipal waterworks, sued the village of Haverstraw, New York, upon a contract made by its board of trustees employing him to design and supervise the construction of a system of waterworks for the village. Under the New York law (sections 520–529, N. Y. Conservation Law [Consol. Laws, c. 65]), the village must get the approval of the Water Power and Control Commission of the state, and this the trustees started a proceeding to procure; but a succeeding board failed to press it and finally discontinued it, and repudiated the contract. The plaintiff, who had prepared the plans in full and had delivered them to the village,

sued on the theory that the abandonment of the project was a breach entitling him to loss of profits. The village answered and moved to dismiss the complaint which the court denied. At the trial which followed, the judge directed a verdict for the plaintiff except as to damages, which the jury found in the sum of about $17,000. The defendant appealed from the judgment so entered.

The plaintiff promised to perform four different kinds of services; first, "to submit * * * complete working plans * * * required to place the construction of said water system under contract." This meant to carry them so far with all incidental "surveys, investigations * * * plates, plans, profiles and details," that the contractors could directly estimate upon them. Some of this work, or similar work, had to be done, or at least it was reasonable to do, before the trustees decided whether to build new waterworks, or to keep on with the private system. They had to inform themselves about the chances of bettering the supply, the cost of the proposed work and so on. But some would seem to have been unnecessary until the new waterworks were finally approved by all necessary authorities; for instance, we do not see why, in order to enable the trustees to make up their minds, working plans and specifications need be prepared adequate "to place the construction of said system under contract." Second, the plaintiff was "to prepare all necessary engineering papers" in the proceeding which the trustees must prosecute before the state commission in order to get its approval. Section 521, N. Y. Conservation Law. Not only was the plaintiff to do this, but he was to attend the hearings and help the village attorney, so far as an engineer could. Those services were of course to be rendered before the enterprise had been finally authorized; were indeed part of the effort to get authorization. Third, he was to do the usual work of supervision as the waterworks were being built; that is, "to locate * * * for the contractor * * * the various lines * * * to furnish all grades and engineering information * * * to inspect * * * all materials * * * and to submit estimates of the work done." That of course must all take place after the work was under way. Last, when the whole thing was completed, in order to help its operation he was "to prepare * * * a set of record plans show-

ing the construction that has been done * * * also * * * to furnish * * * suggested ordinance governing the operation of the water system * * * also * * * a suggested schedule of rates * * * and * * * system of accounting." In return for all these services the trustees promised to pay him "seven per cent. of the cost of said work * * * as indicated by the amounts paid on each separate contract"; these payments not being allocated among the four classes of service. If the project did not go through, he was in any event to get $800 as the cost of preparing plans. It will thus appear, since the defendant's promise was indivisible, that if the trustees had no power to employ the plaintiff to supervise the work, or to make "record plans," ordinances and a rate schedule, or to prepare more plans and specifications than were necessary to advise them and to present their case to the commission, their promise did not create any contract at all. They had no power to pay for what they had no power to demand. The plaintiff might be able to sue on a common count for labor and services, but he could not recover damages.

The contract was executed on July 2, 1928, and two weeks later the trustees appointed a village water board to take over construction, with which on August 8, 1928, the plaintiff filed a full set of complete plans and estimates, presumably ready to be submitted to the contractors. On September twentieth the electors of the village ratified a resolution of the trustees, passed on September fourth, authorizing the construction of such a water supply at an expense of $450,000 to be raised by a bond issue; and on January 5, 1929, the trustees filed with the state commission their petition for approval, to which they attached the plans. One hearing was held on February 14, 1929, but the old board was superseded at an election on April first, and the whole enterprise was abandoned by a resolution of the new board on December 15, 1930, which the voters ratified in the following month.

By section 128-a of the N. Y. Village Law (Consol. Laws, c. 64) "no contract shall be made involving an expenditure by the village unless the money therefor has previously been estimated by the board of trustees as necessary to be raised during the then fiscal year, or unless a resolution to borrow money on bonds or other obligations of the village has been adopted by the board of trustees as provided in this chapter or if required by this chapter that the action or resolution of the board of trustees be approved by the electors, then by such approval." This was intended to forbid villages to contract obligations without providing the means of payment; the Court of Appeals in Kelly v. Merry, 262 N. Y. 151, 186 N. E. 425, supported the contract then before them only on the theory that it did not pledge the village's credit. When the section applies two courses are open; the money may be "previously estimated by the board of trustees as necessary to be raised during the fiscal year." Nothing of the sort was done in the case at bar, except that the budget for 1928 contained an item of $8,000 appropriated to "miscellaneous expenses." The trustees adopted the second course and indeed had to do so for the authorized cost, $450,000, could not have been raised in "the then fiscal year." The defendant questions the regularity of the submission to the electors of the trustees' resolution, but the criticism is trivial. On the motion to dismiss, the judge concluded that the contract did not "involve an expenditure," and was not within section 128-a. We think otherwise; it is enough that the village would have to pay seven per cent. of the estimated cost, if the work went through. That payment would be an "expenditure"; the contract "involved it," and was therefore invalid at least until September 20, 1928, except in so far as it could depend upon the appropriation of $8,000. Such an appropriation would not support it; the system of village finance set up by sections 110–112 of the N. Y. Village Law precluded such loose methods. By section 110 the mayor must prepare "an itemized statement in writing of the estimated revenues and expenditures," which must contain "an estimate of the several amounts * * * necessary to provide for the expenses of conducting the business of the village in each board, department and office thereof and for the various purposes contemplated by this chapter and otherwise by law for the fiscal year." The board of trustees then considers this "estimate and tentative budget" and must "prepare a budget" which becomes such by its vote, section 111. "The several sums estimated * * * shall be and become appropriated in the amounts and for the several * * * purposes as therein specified." The board is to levy enough taxes to cover this budget, section 112, but may use any funds carried over.

Even if the plaintiff's services had been only to give the information needed by the trustees to make up their minds, it was a special item ascertainable in amount, not properly included among "miscellaneous expenses." We do not say that section 128-a means that no contract may be let unless the payment has been already entered in the budget; possibly merely a previous resolution of the trustees will do; there was none here. We do say that the item of $8,000 in the budget would not serve.

However, after the electors had approved the trustees' resolution of September fourth the project was authorized, if the village alone could authorize it; and the trustees might employ the plaintiff to help them in the proceeding before the state commission. But they could not even then contract for more, because under article 11 of the New York Conservation Law (section 520 et seq.), the final word as to the construction of any municipal water supply rested with the Water Power and Control Commission. Section 521 of the Conservation Law provides that "No municipal corporation * * * shall * * * have any power to acquire * * * a water supply * * * until such * * * corporation * * * has first submitted the maps, plans, and profiles therefor to the commission * * * and until the commission shall have approved the same." Section 523 prescribes in detail the procedure to be taken and the considerations which are to control the commission's judgment. Thus, as to any services to be performed after the commission's approval, the defendant's obligation was necessarily contingent; as the commission never approved, prima facie no liability arose. If the plaintiff had been the party to procure the approval, he would have had to show that the village prevented or interfered with him; as the village alone could prosecute the proceeding, we may assume arguendo with him that the trustees impliedly promised to do so. His argument is that this promise created an obligation and that when the village discontinued the proceeding, it was a breach. But the plaintiff did not show the loss due to the breach, for no one can tell whether the village would ever have secured the approval. If not, he lost nothing, and damages ordinarily do no more than put the promisee where performance would have put him. Some of our language in Oltarsh v. Bratter (C. C. A.) 48 F.(2d)

567, 568, may seem to apply this general doctrine to a case where the promisor has prevented the fulfillment of the condition, but it is to be read with the facts. Apparently the plaintiff in that case would not have got the lease anyway; he had already failed to do so, and in so far as any part of the opinion may be thought to commit us to the doctrine that the burden rests upon the promisee, we do not consider ourselves bound by it. There is warrant for saying that the promisee ought not to be required to prove that a condition which the promisor has prevented, would have been fulfilled. He may not be able to do so and doubts ought not, perhaps, to be resolved in favor of a wrongdoer; certainly there is authority for that opinion (Williston, § 677), though the promisor can always excuse himself if he can show that the condition would not have been fulfilled even if he had not interfered. Cf. Restatement, Contracts, § 315 (a).

We may leave the point open because to get the commission's approval was not like getting the approval of a local chamber of commerce, for example. If performance had depended upon such an approval, a contract would have been made at once, and assuming that the village had by implication promised to seek it, it would have been liable at least for nominal damages. But it is very doubtful in the first place whether a municipality can make a contract, ancillary and incidental to a public work, without the implied condition that it may abandon the work. Williamson v. City of N. Y., 171 App. Div. 439, 157 N. Y. S. 336, affirmed 223 N. Y. 646, 119 N. E. 1086; Rittenhouse v. Mayor, etc., of Baltimore, 25 Md. 336. In the first of these cases the city did not need the approval of any state authority to undertake the improvement; its own board of estimate was enough. Yet, although the court assumed that the borough president had power to employ the plaintiff as an engineer, it held that his employment was subject to defeat when the board of estimate and the contractor agreed to rescind their own contract and to abandon the work. We need not go so far; for the purposes of this case we could agree that when a municipality changes its mind about a public improvement, it remains bound by existing ancillary contracts not expressly made conditional. Here the village had no power to "establish" a water supply at all; the power granted by section 221 of the Village

Law was subject to section 521 of the Conservation Law. It makes no difference whether the commission should consider nothing but the fair apportionment of the available water supply among the communities of the state; or whether in addition it may review the village's decision in the village's own interest. In the only judicial declaration on the subject (People ex rel. Sidney Water Works Co. v. Conservation Commission, 175 App. Div. 5, 161 N. Y. S. 522), the ruling of the commission was reversed because the court thought that it was not for the benefit of the village to develop the supply; the distribution of the state's water supply did not apparently enter into the decision. Even if that be wrong, the approval is just as necessary before the village may undertake the venture; and in New York as elsewhere powers granted to municipalities must be exercised in strict accordance with the conditions imposed. In re Board of Water Commissioners of White Plains, 176 N. Y. 239, 68 N. E. 348; Brown v. Ward, 246 N. Y. 400, 159 N. E. 184. It has several times been held that a contract made by one official and within his powers creates no liability, if the project is subject to the determination of another official, who chooses not to take it up. Witmer v. Jamestown, 125 App. Div. 43, 109 N. Y. S. 269, affirmed 196 N. Y. 553, 90 N. E. 1167; Withers v. New York, 123 App. Div. 283, 107 N. Y. S. 955, affirmed 193 N. Y. 668, 87 N. E. 1130; Hildreth v. New York, 138 App. Div. 103, 122 N. Y. S. 1053, affirmed 203 N. Y. 644, 97 N. E. 1106. No obligation of any sort arises until the work receives the prescribed statutory sanction. True, it does not inevitably follow that a subordinate authority may not contract to persuade its superior, though in the only case where the point was raised, it was decided that it might not. Wells v. East Aurora, 236 App. Div. 474, 259 N. Y. S. 598. The power to seek the approval of the superior is held for the benefit of the public; it should not be exercised for that of an individual except in so far as that may be essential to its discharge. As we have already said, the trustees might properly have employed an engineer to inform them before they came to a decision, or further employ him to help them with the technical details of the proceeding before the commission. These services might be incidentally valuable in the construction of the waterworks themselves, but we cannot see why he should be employed in advance to draw complete working plans and specifications, or to supervise and check the contractors as they proceeded, or to prepare record plans, ordinances and a schedule. All these matters might equally well await approval; and the result of attempting to contract for them was to tie the trustees' hands if they wished to withdraw, a power they should retain as long as no substantial interest of the village was sacrificed. The defendant's promises of July 2, 1928, never created an obligation.

Therefore, the complaint was fatally defective and should have been dismissed. Whether it can be amended into a complaint on a quantum meruit, we do not decide; we leave the matter to the discretion of the District Court in the first instance. As to the merits of such a count we have also nothing to say. Section 128-a may forbid any recovery even on a quantum meruit; in any event the recovery for any services rendered before September twentieth should be limited to the value of so much as was essential to enable the trustees to decide whether to take up the project. Since, as we have said, section 128-a did not apply after September 20, 1928, it may be that the plaintiff can also recover the value of his assistance in the proceeding before the state commission; we do not say as to this either.

This result is entirely just. The plaintiff was charged with notice of the limitations upon the powers of municipalities; indeed it is hard to suppose that with his experience he had not got some actual acquaintance with them in the past. In justice he should recover only the value to the village of what he gave to it.

Judgment reversed; cause remanded with instructions for further proceedings in accordance with the foregoing.